RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ELOISE HITCHCOCK; SHERYL KAE,

        *Plaintiffs-Appellants*,

    *v.*

CUMBERLAND UNIVERSITY 403(b) DC PLAN; CUMBERLAND UNIVERSITY; JOHN DOES 1–10,

        *Defendants-Appellees*.

No. 16-5942

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:15-cv-01215—Waverly D. Crenshaw, Jr., District Judge.

Argued: January 25, 2017

Decided and Filed: March 14, 2017

Before: MERRITT, CLAY, and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:** Blair L. Byrum, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. Karla M. Campbell, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellants. Daniel W. Olivas, LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C., Nashville, Tennessee, for Appellees. **ON BRIEF:** Blair L. Byrum, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. Karla M. Campbell, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellants. Charles W. Cagle, Laura H. Alrutz, Brian S. Faughnan, LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C., Nashville, Tennessee, for Appellees.

_____

**OPINION**

_____

CLAY, Circuit Judge.   Eloise Hitchcock ("Hitchcock") and Sheryl Kae ("Kae") (collectively, "Plaintiffs") appeal from the order entered by the district court granting the motion of the Cumberland University 403(b) DC Plan (the "Plan") and Cumberland University (the "University") (collectively, "Defendants") to dismiss without prejudice this Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, action.

For the reasons that follow, we **REVERSE** the district court's judgment and **REMAND** the case for further proceedings consistent with this opinion.

**I.  BACKGROUND**

**Statement of Facts**

Plaintiffs were employees of the University and were participants in the Plan.  Hitchcock was the director of the University's library, and Kae was the director of business programs and a professor.  Hitchcock worked at the University from August 27, 2007, to March 5, 2015.  Kae worked at the University from January 31, 2012, to September 2014.

The Plan is a defined contribution pension plan sponsored by the University for its employees.  In 2009, the University adopted a five percent matching contribution, whereby the University would match an employee's contribution to the Plan up to five percent of the employee's salary.  The 2009 Summary Plan Description stated that "[i]f [the employee] contribute[s] 5% or more of [their] Compensation[,] . . . [the] Employer will make a Matching Contribution of 5% of [the employee's] Compensation."   (R. 1-3, 2009 Summary Plan Description, Page ID #59−60.)

On October 9, 2014, the University amended the Plan to replace the five percent match with a discretionary match, whereby the University would determine the amount of the employer's matching contribution on a yearly basis (the "amendment"). (*Compare* R. 1-2, 2014 Plan Document, Page ID #40 (plan document indicating that the employer's matching

contribution is discretionary and determined from year to year), *with* R. 1-1, 2009 Plan Document, Page ID #20 (plan document indicating that the employer's matching contribution is five percent of the employee's compensation if the employee contributes five percent or more of his or her compensation to the plan)).

The University made the amendment retroactive effective January 1, 2013. The University also announced that the employer matching contribution for the 2013–14 year would be zero percent, and on May 29, 2014, the University announced by way of email that the employer matching contribution for the 2014–15 year would be zero percent.

With regard to amending the Plan, the 2009 Summary Plan Description states that:

> The Plan will be amended from time to time to incorporate changes required by the law and regulations governing retirement plans. [The] Employer also has the right to amend the Plan to add new features or to change or eliminate various provisions. An Employer cannot amend the Plan to take away or reduce protected benefits under the Plan (e.g., the Employer cannot reduce the vesting percentage that applies to [the employee's] current balance in the Plan).

(R. 1-3 at 66.)

With regard to receiving information about the Plan, the 2009 Summary Plan Description states that "all Plan Participants shall be entitled to . . . [o]btain, upon request to the Employer, copies of documents governing the operations of the Plan, including . . . updated Summary Plan Description." (*Id*. at 70.)

As of the date of oral argument in this case on January 25, 2017, the University had not produced a summary plan description subsequent to the 2009 Summary Plan Description despite Plaintiffs' repeated requests. Defendants have not provided formal written notice of the amendment regarding the matching provision, and have failed to provide formal written notice of the amendment regarding the annual matching provision within a reasonable period prior to the commencement of the Plan year.

**Procedural History**

On November 12, 2015, Plaintiffs filed a class action complaint against Defendants alleging the following: (1) wrongful denial of benefits on behalf of the benefits class, in

violation of 29 U.S.C. § 1132(a)(1)(B) (Count I); (2) anti-cutback violation on behalf of the benefits class, in violation of 29 U.S.C. § 1054(g) (Count II); (3) failure to provide notice on behalf of the notice class, in violation of 29 U.S.C. § 1132(a)(3) (Count III); and (4) breach of fiduciary duty on behalf of the benefits and notice classes, in violation of 29 U.S.C. § 1104 (Count IV).  On December 23, 2015, Defendants answered the complaint, and on February 9, 2016, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

On June 9, 2016, the district court construed Defendants' motion to dismiss as a motion for judgment on the pleadings because it was filed after Defendants answered the complaint. The district court then granted the motion, dismissed the case without prejudice so that "Plaintiffs may administratively exhaust their claims," and entered judgment.  (R. 45, Order Granting Mot. to Dismiss, Page ID #830.)  Specifically, the district court dismissed Counts I, II, and IV for failure to exhaust administrative claim procedures, and dismissed Count III based on Plaintiffs' failure to state a claim upon which relief could be granted.

On June 22, 2016, Plaintiffs timely appealed the district court's dismissal of Counts II, III, and IV.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

As an initial matter, we address whether we have jurisdiction to adjudicate this appeal in light of the district court's order, which states that Plaintiffs' claims are dismissed without prejudice.  The district court issued its order dismissing the "case" without prejudice, and on that same day, entered final judgment.  Normally, a district court will dismiss a case without prejudice when it believes that the complaint can be saved by amendment.  In such a case, a district court will not enter final judgment.  Conversely, a district court will dismiss a case with prejudice and enter final judgment when it determines that no amendment can save a complaint from the strictures of the civil pleading requirements.  Within thirty days after entry of judgment, the party appealing the order or entry of judgment must file the notice of appeal with the district court clerk.  Fed. R. Civ. P. 4(a)(1)(A).  In other words, a district court's entry of judgment starts the clock on a party's right to appeal.  Here, the district court dismissed Plaintiffs' complaint

without prejudice *and* entered final judgment.   Plaintiffs contend that we have jurisdiction pursuant to 28 U.S.C. § 1291.

Under § 1291, we have jurisdiction over "final decisions of the district courts of the United States."  28 U.S.C. § 1291; *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 172 (3d Cir. 2000) (noting that "a dismissal without prejudice is not a final and appealable order under § 1291, unless the plaintiff can no longer amend the complaint or unless the plaintiff declares an intention to stand on the complaint as dismissed").  "A court of appeals independently evaluates its appellate jurisdiction over cases."  *United States v. Yeager*, 303 F.3d 661, 664 (6th Cir. 2002). We must determine whether the district court intended its order to be final and appealable by dismissing all four claims without prejudice and entering final judgment.[1]

We have explained that "'[f]or a dismissal without prejudice to be inherently final, it must, as a practical matter, prevent the parties from further litigating the merits of the case in federal court.'"  *Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845–46 (6th Cir. 2007) (quoting *Yeager*, 303 F.3d at 665)).  In *Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001), the Ninth Circuit explained that "[w]here the district court dismisses an [entire] *action* without prejudice, . . . the order is final and appealable." *Accord Thompson v. Mich. Dep't of Corr.*, 23 F. App'x 486, 487–88 (6th Cir. 2001) (explaining that "where the district court dismisses *an action* without prejudice, the order is final and appealable," and that "[a] review of the judgment reflects that the district court clearly intended to dismiss the entire action" because it dismissed all of the plaintiffs' claims without prejudice) (emphasis added).

In this case, the district court must have intended to dismiss Plaintiffs' entire action without prejudice because the court dismissed all four of Plaintiffs' claims and stated that it was dismissing the "case" without prejudice.  Moreover, if it did not intend to dismiss the entire action, it would not have entered final judgment; rather, the court would have given Plaintiffs an opportunity to amend their complaint after they had exhausted their administrative remedies. *See Clemens Tr.*, 485 F.3d at 845−46 (citing *Thomas v. Kalu*, 218 F. App'x 509, 512 (7th Cir. 2007)

---

[1]We would undoubtedly have subject matter jurisdiction over this case if the district court had dismissed the entire action with prejudice and entered final judgment.

("[W]e consider the judgment final because the district court showed that it was 'finished with the case' by dismissing the entire action.")).

Furthermore, by not attempting to amend their complaint or object to the district court's entry of judgment, Plaintiffs must have intended to "stand" on the dismissed complaint. *See Clemens Tr.*, 485 F.3d at 845 (citing *Semerenko*, 223 F.3d at 172 (noting that "a dismissal without prejudice is not a final and appealable order under § 1291, unless the plaintiff can no longer amend the complaint or unless the plaintiff declares an intention to stand on the complaint as dismissed")).

Thus, we hold that we have subject matter jurisdiction over Plaintiffs' appeal because the district court dismissed the *entire action* without prejudice and entered final judgment, thereby making its order final and appealable under § 1291.

**B.  Failure to Exhaust Administrative Remedies**

### 1.  Preservation of Issue on Appeal

Defendants first contend that Plaintiffs did not raise below their argument addressing whether the district court erred in applying the administrative exhaustion requirement to Counts II and IV.

Plaintiffs argue that that they did raise this argument before the district court as evidenced by the district court's order addressing the issue.  Plaintiffs further argue that they had to devote their initial response brief to Defendants' admitted procedural error in filing a motion to dismiss rather than a motion for judgment on the pleadings.  The record clearly provides support for Plaintiffs' contentions.  (*Compare* R. 47, District Court Order, Page ID #836 ("'[t]he Sixth Circuit has not determined whether [statutory violation claims] under ERISA [] must be administratively exhausted") *with* R. 23-1, Pls.' Surreply, Page ID #333 n.2 ("'The Third, Fifth, [] Tenth [and D.C.] Circuits also distinguish between claims for benefits and claims to enforce statutory rights.  The Sixth Circuit has not reached the issue.")

Therefore, we hold that Plaintiffs properly preserved this argument for appeal.

### 2. Standard of Review

"'The district court's decision regarding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6).'" *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999–1000 (6th Cir. 2015) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). We take "as true all well-pleaded material allegations in the opposing party's pleadings, and affirm the district court's grant of the motion only if the moving party is entitled to judgment as a matter of law." *Id.* (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). This non-deferential standard of review applies to the district court's dismissal of Count III and whether Defendants violated § 1132(a)(3) of ERISA by failing to provide notice of the amendment prior to the start of the Plan year.

On the issue of what standard of review applies to the district court's application of the exhaustion principles to Counts II and IV, the district court is usually afforded a more deferential standard of review. *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994) (citing *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990) ("[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion."), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001); and *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453−54 (6th Cir. 1991) (adopting abuse of discretion standard to a district court's decision to apply exhaustion requirement)). Plaintiffs argue that the correct standard of review is *de novo* because the applicability of exhaustion principles to Counts II and IV is a question of law.[2] Defendants argue that the correct standard of review is abuse of discretion.

The predominant issue here is whether exhaustion principles should apply to the anti-cutback and fiduciary duty claims, which is a question of law. Therefore, we review *de novo* the district court's application of the exhaustion principles to Counts II and IV. *See Harrow,*

---

[2]The Department of Labor argues that we should review *de novo* the district court's application of exhaustion principles rather than abuse of discretion because a court's review of the applicability of exhaustion principles is a question of law. (U.S. Dep't of Labor Br. 9 (citing *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir. 2002)).

279 F.3d at 248; *Diaz v. United Agric. Employee Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995) ("Because the potential applicability vel non of exhaustion principles is a question of law, we consider it de novo.  But if that question gets an affirmative answer, the District Court's decision not to grant an exception to the application of those principles is reviewed for an abuse of discretion.").

### 3. Analysis

Plaintiffs argue that the district court erred in requiring exhaustion of administrative remedies for Counts II and IV because that holding is contrary to binding Sixth Circuit precedent and will place us in the minority of circuits which have addressed this issue.  Plaintiffs further contend that the district court erred in dismissing Count III because Plaintiffs lacked the proper discovery to sufficiently argue why Defendants failed to provide notice of the amendment.  Defendants argue in response that the district court did not err in dismissing the entire action because the complaint failed to sufficiently allege that Plaintiffs had standing to bring the action.  Defendants next contend that the amendment was a business decision and not a fiduciary act by the University, and therefore, Count IV was properly dismissed.  Defendants further contend that, in the event we determine to reconcile the circuit split on the application of administrative exhaustion to statutory ERISA claims, it urges us to adopt the nuanced approach developed by the Third Circuit in *Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015).  Under such an approach, Defendants argue that the district court correctly dismissed the complaint without prejudice to permit Plaintiffs to exhaust administrative remedies prior to filing suit in order to create a more comprehensive administrative record for their statutory claims.

### a.  Relevant Legal Principles

"There is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them."  *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743 (2004).  "ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides a contract-based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits under the terms of an employee benefit plan."  *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998).

Although the statute itself is "silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action[,] . . . due to ERISA's provision for the administrative review of benefits," the courts, including this Circuit, have read an exhaustion requirement into the statute. *Id.*

> The purposes of exhausting administrative remedies were discussed in *Costantino*:
>
> (1)     To help reduce the number of frivolous lawsuits under ERISA.
> (2)     To promote the consistent treatment of claims for benefits.
> (3)     To provide a nonadversarial method of claims settlement.
> (4)     To minimize the costs of claims settlement for all concerned.
> (5)     To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.
> (6)     To enhance the ability of trustees of benefit plans to correct their errors.
> (7)     To enhance the ability of trustees of benefit plans to interpret plan provisions.
> (8)     To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

*Costantino*, 13 F.3d at 975. "If these purposes would not be furthered, there would be no sense in exhausting administrative remedies." *Id.*

The administrative exhaustion requirement includes an exception for circumstances "'when resort to the administrative route is futile or the remedy inadequate.'" *Id.* at 974 (citation omitted). In order to satisfy the high standard of futility, "[a] plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Fallick*, 162 F.3d at 419 (citation omitted); *see also Commc'ns. Workers of Am. v. AT & T*, 40 F.3d 426, 432 (D.C. Cir. 1994) ("The futility exception is . . . quite restricted and has been applied only when resort to administrative remedies is clearly useless.") (internal quotation marks and citations omitted). We have affirmed a district court's finding of futility where the plaintiffs challenged the legality of a plan's retroactive amendment. *See Costantino*, 13 F.3d at 975. A challenge to the "legality" of a plan's amendment, rather than a challenge to the interpretation of an amendment, is futile because "if [p]laintiffs were to resort to the administrative process, [the plan administrator] would merely recalculate their benefits and reach the same result." *Id.*

Moreover, "[t]he anti-cutback rule serves a critical role in this [ERISA] enterprise by prohibiting pension plan amendments that decrease plan participants' 'accrued benefits.'" *Thornton v. Graphic Commc'ns Conference of Intern. Broth. of Teamsters Supplemental Retirement and Disability Fund*, 566 F.3d 597, 601 (6th Cir. 2009). The Treasury has defined "accrued benefit" to mean "in the case of a plan which is not a defined benefit plan," like the Plan in this case, "the balance of the employee's account." I.R.C. § 411(a)(7)(A)(ii).

### b. Application

#### i. Standing

Defendants argue that the district court's judgment should be affirmed because Plaintiffs do not have standing to sue in federal court. Defendants contend that Plaintiffs failed to allege that they made actual contributions to the Plan, which would have triggered a matching obligation by Defendants. Specifically, Defendants contend that the only allegation referencing any such contribution is stated in Paragraph 12, which reads that "[d]uring his or her tenure at Cumberland University, each Plaintiff participated in the Plan." (R. 1, Complaint, Page ID #4 ¶ 12.) Defendants argue that Plaintiffs' allegation that they participated in the Plan "during" their tenure does not mean that they contributed to the Plan during the time period affected by the amendment. Plaintiffs argue in response that Defendants waived this standing argument because they did not raise it below; and second, ERISA provides a cause of action to "participants" of such plans.

Plaintiffs have standing to sue because ERISA provides a cause of action to "participants" of employee pension plans. Only "participants" and "beneficiaries" as defined by ERISA have standing to sue under ERISA. 29 U.S.C. § 1132(a)(1). Under ERISA, "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). Hitchcock worked at the University from August 27, 2007, to March 5, 2015, and Kae worked at the University from January 31, 2012, to September 2014. The retroactive amendment went into effect in January 2013, and lasted through the end

of 2015. Hitchcock and Kae were employees of the University during the time disturbed by the Plan amendment, and therefore, were participants under ERISA.

### ii. Exhaustion of Administrative Remedies

We next address whether the district court erred in holding that Plaintiffs must first exhaust administrative remedies before bringing suit on Counts II and IV. We hold that the district court erred.

In *Costantino*, we concluded that the district court did not abuse its discretion in ruling that the plaintiffs were not required to exhaust their administrative remedies prior to filing their ERISA action against the plan administrator. A group of retirees filed a class action against their former employer and the Secretary of the Board of Administrators of TRW's Salaried Employees Pension Plan, alleging, *inter alia*, that the plan administrator's retroactive amendment to the plan was unconstitutional and violated ERISA's anti-cutback rules because it improperly calculated the retirees' lump-sum distributions and eliminated retirement benefits they would have received but for the retroactive amendment. *Id*. at 972–73. One of TRW's arguments was that the plaintiffs' claims should be dismissed for failure to exhaust administrative remedies. *Id*. at 973.

We affirmed the district court's decision based on its reasoning that administrative exhaustion would be futile since the plaintiffs' claims were "directed to the *legality* of [the plan administrator's] amended [p]lan, not to a mere *interpretation* of it." *Id*. at 975 (emphasis in original). We reiterated the district court's reasoning that if the plaintiffs "were to resort to the administrative process, [the plan administrator] would merely recalculate their benefits and reach the same result." *Id*. We also looked to the purposes underlying the administrative exhaustion requirement for further support. After reviewing the purposes, we specifically stated that:

> This lawsuit can hardly be said to be frivolous, and there is little likelihood that this matter will become any less adversarial. Costs for all parties would probably increase if Plaintiffs were forced to go back through the administrative process. [The plan administrator] is unlikely to change its position through a "correction of error" or different "interpretation" of the plan given its stance in the instant litigation, and the factual record is already well assembled. Consequently,

exhaustion of administrative remedies in the present case would be purposeless, as well as futile and inadequate.

*Id*. at 975.

Similarly, in *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436 (6th Cir. 2009), we held that a plan participant's challenge to a plan's methodology for calculating lump-sum distributions was not subject to ERISA's administrative exhaustion requirement because the challenge was directed at the plan's legality. In *Durand*, we echoed the rule set out in *Costantino*, "that, in an ERISA case, when the plaintiff's 'suit [i]s directed to the *legality* of [a plan], not to a mere *interpretation* of it[,]' exhaustion of the plan's administrative remedies would be futile." 560 F.3d at 439−40 (emphasis in original) (quoting *Costantino*, 13 F.3d at 975)). In *Durand*, we compared the circumstances when administrative exhaustion would be required and when it would not. We explained that administrative exhaustion is required "when an ERISA plaintiff contends that his benefits were improperly calculated under the terms of a plan." *Id*. at 439. We further explained that we enforce the exhaustion requirement because "ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator" because "[a]dministrators, not courts, are the experts in plan administration." *Id*.

Notwithstanding, in cases where the plaintiff challenges the legality of a plan's methodology, "the claimant typically concedes that her benefit was properly calculated under the terms of the plan as written, but argues that the plan itself is illegal in some respect." *Id*. Because the question of legality "is one within the expertise of the courts[,]" the decision to require such a claimant to exhaust administrative remedies in order "to recalculate a benefit she concedes was already properly calculated under the terms of the plan as written, misses the point of the dispute." *Id*. In situations where a claimant concedes her benefit was properly calculated under the terms of the plan as written, "exhaustion wastes resources rather than conserves them." *Id*. Consequently, "we have held that, in an ERISA case, when the plaintiff's suit is directed to the *legality* of a plan, not to a mere *interpretation* of it, exhaustion of the plan's administrative remedies would be futile." *Id*. at 439−40 (emphasis in original) (internal quotation marks and brackets omitted).

In the instant case, Plaintiffs challenge the legality of the Plan amendment, i.e., the amendment that reduced the amount the employer contributed to the employee's pension plan from five percent to a discretionary amount. As iterated in *Durand*, the legality of the amendment is a question best suited for the courts to decide. Contrary to the district court's position, Plaintiffs are not challenging the calculation of their benefits nor are they only seeking monetary damages. Plaintiffs concede that their benefits were properly calculated. The district court improperly viewed Counts II and IV as additional claims for wrongful denial of benefits. The district court relied on the damages sought for Count I and the damages sought for Counts II and IV, and reasoned that because Counts II and IV sought damages in the same amount as Count I, Counts II and IV constituted wrongful denial of benefits claims dressed as statutory ERISA claims.

With respect to Count II, the district court expressly stated that "[b]ecause Plaintiffs did not exhaust their administrative remedies, this [wrongful denial of benefits claim] is [] dismissed." (R. 47 at 836.) With respect to Count IV, the court explained how the complaint supported "Defendants['] argu[ment] that the fiduciary-duty count is a repackaging for individual benefits. . . . [because] it asks for damages in the amount of the five percent matching that the Plan eliminated in its amendment." (*Id*.) The record demonstrates the contrary. Plaintiffs brought their anti-cutback claim (Count II), to "obtain appropriate equitable relief to enforce the provisions of ERISA and the relevant plan." (R. 1 at 9 ¶ 45.) Likewise, Plaintiffs brought their breach of fiduciary duty claim (Count IV) to "obtain appropriate equitable relief on behalf of the plan itself." (*Id*. at 11 ¶¶ 62–63.) The district court was incorrect in narrowly interpreting Plaintiffs' statutory claims.

While it is true that the damages potentially recoverable for the statutory ERISA claims may be the same as the damages potentially recoverable for the wrongful denial of benefits claim, depending on the court's determination of whether the amendment is legal, the resulting benefits are not the gravamen of Plaintiffs' challenge. The record demonstrates that Plaintiffs were challenging the legality of the Plan amendment with Counts II and IV. It is a serious mischaracterization to simply say that because the denial of benefits claim and the statutory ERISA claims result in the same monetary sum, all must constitute denial of benefits claims.

Our precedent indicates that administrative exhaustion is a futile requirement for statutory ERISA claims that challenge the legality of a plan amendment. If such exhaustion were required for those statutory claims, in order for Plaintiffs to receive proper resolution from the plan administrator, the administrator would need to determine whether the retroactive amendment was properly instituted in the first place, i.e., whether the amendment was legal. As stated in *Durand*, that is not the plan administrator's role. It is the role of the courts to determine the legality of a plan amendment.

We note that the circuits are split on the issue of whether participants or beneficiaries of an ERISA plan "must exhaust internal plan remedies before suing plan fiduciaries on the basis of an alleged violation of duties imposed by the statute." *Mason v. Cont'l Grp.*, 474 U.S. 1087, 1087 (1986) (White, J., dissenting from denial of certiorari) (stating that "the Court should grant certiorari in this case in order to resolve the uncertainty over the existence of an exhaustion requirement in cases of this kind"). "[W]e have not yet decided whether a beneficiary must exhaust administrative remedies prior to bringing claims based on statutory rights[.]" *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005). Rather, we have resolved the issue of administrative exhaustion for certain statutory claims in prior cases "on the grounds that exhaustion would be futile or that the fiduciary-duty claim is merely a repackaged claim for individual benefits which the beneficiary must administratively exhaust before filing suit." *Id.*; *see also Durand*, 560 F.3d at 440. In prior ERISA cases, we have required the plaintiffs to either administratively exhaust their claims or plead futility, which is a high pleading standard to meet. Today, we resolve the question of whether participants or beneficiaries claiming statutory violations of an ERISA plan "must exhaust internal plan remedies before suing plan fiduciaries on the basis of an alleged violation of duties imposed by the statute." *Mason*, 474 U.S. at 1087 (White, J., dissenting from denial of certiorari). We hold that (1) there is no exhaustion requirement for ERISA claims alleging statutory, rather than plan-based, violations, and (2) Counts II and IV assert statutory violations not subject to the exhaustion requirement.[3]

---

[3]We do not address whether Count III is a statutory claim because the district court did not dismiss Count III for failure to exhaust administrative remedies. Our disposition of Count III is discussed below in Section B.3.b.iii.

The Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits "have all held exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of the Plan." *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965 (D.C. Cir. 2014) (discussing fiduciary breach claims) (citing *Zipf v. AT & T*, 799 F.2d 889, 891–94 (3d Cir. 1986) (retaliation claim); *Smith v. Sydnor*, 184 F.3d 356, 364–65 (4th Cir. 1999) (fiduciary breach claim); *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x. 335, 338–39 (5th Cir. 2006) (fiduciary breach claim); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 751–52 (9th Cir. 1984) (retaliation claim); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1204–05 (10th Cir. 1990) (retaliation claim)).

Conversely, the Seventh and Eleventh Circuits "have held the exhaustion requirement applies even where plaintiffs assert statutory rights." *Stephens*, 755 F.3d at 965 (citing *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649–50 (7th Cir. 1996) (noting that requiring parties to exhaust administrative remedies for statutory claims would enable plan fiduciaries to compile a factual record that would assist the court in reviewing their action and would minimize the number of frivolous lawsuits by promoting a non-adversarial dispute resolution process)); *see also Mason v. Cont'l Grp.*, 763 F.2d 1219, 1226–27 (11th Cir. 1985)).

We agree with the Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits.  Thus, we hold that ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures before proceeding to federal court when they assert statutory violations of ERISA.  *See Stephens*, 755 F.3d at 966.

We note that actions brought "to enforce the terms of a plan" are distinguishable from those brought "to assert rights granted by the federal statute." *Zipf*, 799 F.2d at 891.  In *Zipf*, the Third Circuit supported its holding that the exhaustion requirement is not applicable to statutory ERISA claims by first reasoning that "[t]he provision relating to internal claims and appeals procedures, Section 503, refers only to procedures regarding claims for *benefits*." *Id*.; *see also* ERISA § 503, 29 U.S.C. § 1133 (requiring every employee benefit plan to "afford a reasonable opportunity to any participant whose *claim for benefits* has been denied for a full and fair review by the appropriate named fiduciary" (emphasis added)).  The court then explained that "the

legislative history suggests that the remedy for [claims based on violations of ERISA's substantive guarantees] was intended to be provided by the courts." *Id*. at 892.

The D.C. Circuit succinctly stated in *Stephens* that:

[w]hile plan administrators may have particular expertise in interpreting their pension plans' terms, federal judges have particular expertise in interpreting statutory terms. And while consistent application of a pension plan's terms might best be achieved by allowing plan administrators to interpret those terms in the first instance, consistent application of the law is best achieved by encouraging a unitary judicial interpretation of that law. Federal district courts also have the expertise to create a factual record, should that be necessary, and to encourage settlement of disputes where appropriate.

755 F.3d at 966.

We further note that this statutory claims exception to the exhaustion requirement does not apply to "plan-based claims 'artfully dressed in statutory clothing,' such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." *Id*. at 966 n.7 (quoting *Drinkwater v. Metro Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988)).

Plaintiffs' anti-cutback and breach of fiduciary duty claims are properly characterized as statutory claims because they are claims asserting rights granted by ERISA. Section 1054(g) of ERISA substantively guarantees that an accrued benefit may not be decreased by an amendment of the plan which does not comply with the statute. 29 U.S.C. § 1054(g). Section 1104 of ERISA guarantees that a fiduciary of an employee benefit plan will discharge his or her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

"[T]he relevant inquiry is what forms the basis of [Plaintiffs'] right to relief: the contractual terms of the pension plan or the provisions of ERISA and its regulations." *Stephens*, 755 F.3d at 967. The rights Plaintiffs assert—the right to receive accrued benefits which have not been decreased by an illegal amendment, and the right to have a fiduciary discharge his or her duties in accordance with the statute—are granted to them by ERISA, not by the Plan's

contractual terms. Thus, Plaintiffs assert statutory claims, which are not subject to the exhaustion requirement.

We also reject Defendants' suggestion that we follow the narrow approach outlined by the Third Circuit in *Cottillion*. In *Cottillion*, the Third Circuit refrained from ruling on the issue of whether administrative exhaustion applied to statutory ERISA claims, and instead affirmed the district court by holding that exhaustion would be futile. 781 F.3d at 54. If we were to follow Defendants' suggestion, it would not resolve the issue of whether administrative exhaustion applies to statutory ERISA claims, and it would further delay our decision on that issue.

Therefore, we conclude that the district court erred in applying the administrative exhaustion principles to Counts II and IV.[4]

### iii. Failure to Provide Notice

Lastly, we address whether the district court erred in dismissing Count III for failure to state a claim. We hold that the district court erred.

In addition to dismissing Counts II and IV for failure to exhaust administrative remedies, the district court also dismissed Count III on two grounds. First, the district court concluded that Plaintiffs failed to plead Count III with particularity after finding that Plaintiffs did not respond to Defendants' motion to dismiss. Specifically, the district court reasoned that since Plaintiffs failed to respond to Defendants' argument concerning Count III, "[f]or this reason alone, Defendants' motion to dismiss Count Three is granted." (R. 47 at 837.) Second, the district court summarily concluded that Plaintiffs failed to state a claim upon which relief could be granted after it made an "independent review of the [merits of the] pleadings." (*Id.*) The district court did not go into further analysis (or rather, any analysis) on how Plaintiffs failed to respond to the argument or why the complaint did not plead with particularity the claim that Defendants failed to give proper notice of the amendment to Plaintiffs.

---

[4]The United States Department of Labor, as *amicus curiae*, also supports the position that the district court erred in applying an administrative exhaustion requirement to Plaintiffs' statutory ERISA claims.

In support of its conclusion that Plaintiffs waived any opposition to Defendants' argument concerning Count III, the district court cited one of our unpublished opinions, *Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328 (6th Cir. 2008). In *Humphrey*, the plaintiff failed to oppose the defendants' motions to dismiss. As a result, we concluded that the plaintiff waived his appellate arguments. *Id*. at 331. Unlike the plaintiff in *Humphrey*, Plaintiffs in this case did oppose Defendants' motion to dismiss. Plaintiffs explained why they were unable to present a proper argument in response to Defendants' motion on Count III. Plaintiffs argued that they needed "discovery from Defendants about the various representations made to participants about their retirement benefits (for example, materials provided to employees by Defendants' Human Resources Department) and required notices that were not made to participants (such as notice of plan amendments, updated summary plan description, etc.)." (R. 16, Pls.' Resp. to Defs.' Mot. to Dismiss, Page ID #167.) Plaintiffs further argued that the documents and facts needed to be discovered and that the failure to provide such discovery by Defendants rendered the motion to dismiss "null or at the very least premature." (*Id*.)

We hold that the district court erred. *Humphrey* is distinguishable on the grounds that it involved a situation where the plaintiffs failed to oppose the motion altogether. Plaintiffs in this case opposed the motion as to Count III by arguing that they were unable to properly present an argument due to Defendants' failure to provide the necessary discovery. Rather than dismiss the complaint, the district court should have allowed Plaintiffs an opportunity to formally request the documents. At the very least, the district court should have given Plaintiffs an opportunity to amend the complaint. On remand, the district court should determine whether Count III is a statutory ERISA claim not subject to the administrative exhaustion requirements.

### 4. Summary

We hold that the district court erred in applying the administrative exhaustion principles to Counts II and IV. As a matter of first impression, we hold that plan participants or beneficiaries, such as Plaintiffs here, need not exhaust administrative remedies before proceeding to federal court when they assert statutory violations under ERISA. The record in this case demonstrates that Plaintiffs asserted statutory violations of ERISA which challenged the legality

of the Plan's amendment.  We further hold that the district court erred in finding that Plaintiffs failed to oppose Defendants' argument as to Count III.

### III. CONCLUSION

For the aforementioned reasons, we **REVERSE** the district court's judgment and **REMAND** the case for further proceedings consistent with this opinion.