NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0046n.06

Case No. 17-5588

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

OLIVER HUSTON BARBER, III, on behalf of himself and two classes of similarly situated persons,

      Plaintiff-Appellant,

v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

      Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 23, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

BEFORE: COLE, Chief Judge; SILER and COOK, Circuit Judges.

COOK, Circuit Judge. Oliver Barber sued Lincoln National Life Insurance Company ("Lincoln") under the Employee Retirement Income Security Act of 1974 ("ERISA") for (1) offsetting from his disability benefits his earnings as a political consultant and (2) calculating those offsets using figures he disclosed to Lincoln rather than the numbers he later reported for federal income tax purposes. The district court dismissed the first count for failure to state a claim and the second for failure to exhaust administrative remedies. For the reasons explained here, we AFFIRM.

## I. BACKGROUND

Barber worked as a litigator at Stites & Harbison, PLLC. The firm's long-term disability insurance policy with Lincoln offers both Total and Partial Disability benefits.[1] Under the

---

[1] Because the complaint attaches the policy and the claims revolve around the policy's terms, we consider the policy on this appeal. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

policy, beneficiaries may qualify for disability benefits when they cannot "perform one or more of the Main Duties of his or her Specialty in the Practice of Law on a full-time basis." If a beneficiary engages in Partial Disability Employment—in other words, an employee continues "working at his or her Own Occupation or any other occupation" under reduced hours, duties, or pay—then Partial Disability benefits apply. But if a disabled beneficiary stops working altogether, then he may be entitled to Total Disability benefits.

After being diagnosed with Parkinson's disease, Barber applied for Total Disability benefits and Lincoln approved his application. When Lincoln later asked whether he had any other sources of income, Barber reported that he was working as an independent contractor for a political campaign. Lincoln thereafter began reducing his monthly benefits to reflect those consulting earnings. After Lincoln denied his requests to stop offsetting his benefits, Barber initiated this purported class action. He now appeals the district court's dismissal of his complaint. *See Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 864 (W.D. Ky. 2017).

## II.    DISCUSSION

We review de novo the district court's decision on the motion to dismiss for failure to state a claim. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where, as here, a policy grants a plan administrator discretion to interpret the policy, courts apply the deferential arbitrary and capricious standard of review to the administrator's decision. *Shields v. Reader's Digest*

*Ass'n, Inc.,* 331 F.3d 536, 541 (6th Cir. 2003). Thus, Barber's appeal hinges on whether the facts in the complaint, taken as true, plausibly show that Lincoln interpreted the policy arbitrarily and capriciously. *See Tate v. Gen. Motors LLC*, 538 F. App'x 599, 601 (6th Cir. 2013) (examining whether the plaintiffs "have shown that the plan administrator's interpretation is arbitrary and capricious").

## A.

Barber seeks to recover the benefits he claims Lincoln unjustifiably withheld. Lincoln counters that Barber fails to plausibly state a claim because the policy clearly entitled Lincoln to offset Barber's employment earnings from his monthly benefit. When interpreting ERISA plans, "general principles of contract law apply." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012). And we interpret plan provisions "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).

Although the parties dispute whether Barber's benefits should be calculated under the policy's Total or Partial Disability benefits section, Barber's appeal turns on whether his consulting earnings qualify as "Other Income Benefits," which the policy incorporates into both sections. Per the policy, the Total Disability benefit equals "the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage . . . minus Other Income Benefits." And the Partial Disability benefit comprises the lesser of either the "Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment)," or the "Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus . . . Other Income

3

Benefits, except for earnings from Partial Disability Employment." Even evaluating Barber's claim under the Total Disability formula as he alleges it should be calculated, Barber fails to plausibly state a claim because the policy allows Lincoln to consider his earnings as Other Income Benefits under either section.

The first paragraph of the policy's Other Income Benefits section affirms that Earnings may offset benefits:

> **OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under this Policy.

The policy then lists the sources of Other Income Benefits, including Earnings, which it defines, in relevant part, as "pay the Insured Employee earns or receives from any occupation or form of employment, as reported for federal income tax purposes." Because "any occupation or form of employment" encompasses Barber's political consulting work, his earnings qualify as Other Income Benefits. Thus, the policy allows Lincoln to consider that compensation when calculating his monthly benefit.

Despite this clear language, Barber contends that the Earnings provision operates simply as a definition in the Other Income Benefits section, but not as one of "the following sources" that can offset benefits. Although the term "Earnings" never appears in the other sources listed in the Other Income Benefits section (such as Social Security or worker's compensation benefits), Barber claims the term "may be relevant" elsewhere in the contract. To support his reading, Barber points to the Progressive Income Benefit provision, which states, "The

4

Progressive Income Benefit will not be reduced by any Other Income Benefits, or by earnings from any form of employment." Barber suggests that if Other Income Benefits included employment earnings, the references to both Other Income Benefits and "earnings from any form of employment" would be unnecessary. Lincoln claims that this provision only references "earnings" generally—in contrast to the defined term Earnings used in the Other Income Benefits section. But the Earnings definition includes "pay . . . from any occupation or form of employment." And Lincoln fails to explain how that language would not encompass "earnings from any form of employment."

Various sections of the policy, however, confirm that Other Income Benefits includes Earnings. For one, the Exceptions section to Other Income Benefits explicitly exempts Earnings from Other Income Benefits in assessing cost-of-living increases: "The following will not be considered Other Income Benefits . . . a cost-of-living increase in any Other Income Benefit (except Earnings) . . . ." If Earnings were not Other Income Benefits, no exception would be necessary. Similarly, the Cost-of-Living Freeze provision also exempts Earnings: "After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen." Thus, despite the isolated language in the Progressive Income Benefit section, other provisions support the more natural reading, recognizing Earnings as one of the Other Income Benefits sources.

In opposition, Barber argues that Lincoln's inherent conflict-of-interest in both evaluating and paying benefits claims entitles Lincoln's interpretation to little deference. Taking this conflict "into account as a factor in determining whether the [administrator's] decision was

5

arbitrary and capricious," *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989), we still conclude that Barber fails to plausibly allege that Lincoln acted arbitrarily and capriciously because the plain language allows Lincoln to consider his consulting earnings when calculating his benefits.

Barber also insists that Lincoln's interpretation frustrates the "bargained-for" purpose of the policy, which he contends is "to protect earning power of someone who cannot work in his or her own occupation." But Barber—not Lincoln—ignores the bargained-for terms of the policy. Lincoln paid disability benefits after Barber could no longer work as a lawyer; later, it simply applied the policy's terms in offsetting his other earnings from those benefits. Barber effectively asks this Court to overlook language in the Other Income Benefits section that he deems contrary to the policy's purpose. Given the policy's clear language, we cannot. *See Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) ("[T]he plain language of an ERISA plan should be given its literal and natural meaning.").

**B.**

Barber further alleges that Lincoln's offsetting earnings from his monthly benefits violated its duties under ERISA because Lincoln calculated those deductions using the earnings Barber reported to Lincoln rather than the income he later disclosed on his tax return. According to Barber, the premature deduction resulted in Lincoln's using the wrong amount and denied him the time value of his money. The district court dismissed this claim because Barber failed to exhaust his administrative remedies. *Barber*, 260 F. Supp. 3d at 863–64. Barber appeals, arguing that the exhaustion requirement does not bar his claim. We review de novo whether the

6

exhaustion requirement applies. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 559 (6th Cir. 2017).

ERISA's administrative scheme "requires a participant to exhaust his or her administrative remedies prior to commencing suit." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)). The exhaustion requirement includes an exception for "when resort to the administrative route is futile or the remedy inadequate." *Hitchcock*, 851 F.3d at 560 (quoting *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994)). Exhaustion of administrative remedies would be futile when a suit challenges the "legality," rather than the interpretation, of a plan, because the administrator "would merely recalculate [the] benefits and reach the same result." *Id.* (quoting *Costantino*, 13 F.3d at 975). Therefore, when plaintiffs assert "statutory violations of ERISA," they need not exhaust administrative remedies. *Id.* at 564.

In his complaint, Barber alleges that Lincoln's "systemic process in not requesting and using appropriate tax reporting documentation in connection with calculating benefits payments violates Defendant's duties under ERISA." ERISA requires plan fiduciaries to discharge their duties "with the care, skill, prudence, and diligence" necessary under the circumstances. 29 U.S.C. § 1104(a)(1)(B). But the statutory-claims exception to the exhaustion requirement shuns "plan-based claims 'artfully dressed in statutory clothing,' such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." *Hitchcock*, 851 F.3d at 565 (quoting *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 966 n.7 (D.C. Cir. 2014)). The relevant inquiry becomes "what forms the

basis of [Plaintiffs'] right to relief: the contractual terms of the pension plan or the provisions of ERISA and its regulations." *Id.* (quoting *Stephens*, 755 F.3d at 967). Because no ERISA provision requires Lincoln to use tax documentation in offsetting benefits, any such duty could only come from the policy itself.

As Barber alleges a claim based on the policy, he must either "administratively exhaust [his] claims or plead futility." *Id.* at 564. He does neither. Although Barber exhausted his administrative remedies for his denial of benefits claim related to Count I, he concedes that his counts "do not overlap." Lincoln also underscores that before this lawsuit Barber never challenged Lincoln's decision to offset his earnings on a monthly basis using self-reported figures. Because Barber failed to administratively exhaust his remedies or plead futility for Count II, the district court correctly dismissed that count.

## III. CONCLUSION

We AFFIRM the district court's dismissal.