NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0157n.06

No. 21-5901

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER CALIB BROWN; DANIEL R. MOTT; TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, | ) ) ) ) | **FILED** Apr 13, 2022 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| HANOVER AMERICAN INSURANCE COMPANY; GOODMAN-GABLE-GOULD ADJUSTERS/INTERNATIONAL; LMG, INC.; COASTAL TECHNICAL SERVICES, LLC, | ) ) ) ) ) | COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| Defendants-Appellees. | ) ) | |

BEFORE: McKEAGUE, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

After a fire destroyed Christopher Brown's recording studio and its contents, his insurer investigated and ultimately denied coverage. Plaintiffs (Brown, his production company, and a studio tenant) filed this lawsuit, alleging that the insurance, adjustment, and equipment-inspection companies engaged in a conspiracy to defraud them. The district court found that plaintiffs' complaint failed to state a claim upon which relief could be granted. We affirm.

I.

Plaintiff Christopher Brown is a musician and a recording artist. In the fall of 2014, he purchased a recording studio and the equipment necessary to furnish its three interior studios. He

used one studio, leased one to non-party John Falls, and leased the third to plaintiff Daniel Mott. In early 2015, Brown's production company, Tattooed Millionaire Entertainment, LLC (TME), purchased an insurance policy from defendant Hanover American Insurance Company to insure the building and the contents of Brown's studio against loss. Falls and Mott also took out similar policies from Hanover.

In the fall of 2015, someone broke into the studio, committed arson using gasoline, and vandalized and burgled it. Brown gave Hanover notice of the fire immediately. Hanover hired defendant Goodman-Gable-Gould (GGG) to provide claims-adjusting services. A few days after the fire, a GGG representative visited the studio and advised Brown and Mott that they should hire GGG as their personal adjuster. Brown and Mott did so, unaware that Hanover and GGG had a professional relationship. Around the same time, Hanover hired defendants Costal Technical Services, LLC (CTS), and LMG, Inc., to inspect the damaged recording equipment.

Approximately a week later, a Hanover representative visited the studio to begin the adjusting process. That representative stated something to the effect that Hanover was not going to pay this claim. Hanover also requested documentation for each piece of equipment lost in the fire, which Brown explained was on a laptop computer that was stolen by the arsonists. Brown eventually provided documentation to Hanover, most of which was false. Brown maintains that he was unaware the documents had been falsified.

Plaintiffs allege that as of June 2016, Hanover had no intention of making a payment for the loss but continued to assure them that the claim was being processed and investigated. At that time, Brown was working with GGG and Hanover to have the recording equipment removed and repaired in a climate-controlled warehouse. Brown authorized removal of the equipment and

alleges that the agreement was for it to be stored in Memphis, Tennessee. But in July 2016, CTS and LMG moved the equipment to a warehouse in Orlando, Florida, where it remains today.

After the fire, litigation ensued. *See Hanover Am. Ins. Co. v. Tattooed Millionaire Ent.*, *LLC*, 974 F.3d 767 (6th Cir. 2020) ("*Hanover I*"). A jury determined that Brown and Mott made material misrepresentations of the loss to Hanover with the intent to deceive and committed unlawful insurance acts. *Id*. at 774. The jury found Brown and TME liable to Hanover for over $2.2 million, and Mott liable for $250,000. *Id*. We affirmed both judgments. *Id*. at 791.

While *Hanover I* was pending, plaintiffs filed the instant complaint, in which they allege that defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. The scheme, plaintiffs explain, was Hanover's continued investigation despite deciding not to pay the claim, and CTS and LMG's theft and transportation of Brown's property. Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted. The district court granted the motion and dismissed the case without prejudice. Plaintiffs moved for reconsideration, which the district court denied. Plaintiffs timely appealed.

II.

Plaintiffs do not challenge the merits of the district court's decision on the motion to dismiss, therefore forfeiting or waiving any argument that their complaint was adequately pleaded. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006). Instead, plaintiffs contend that the district court erred when it dismissed the "case" instead of dismissing the "complaint." In plaintiffs' eyes, the district court should have dismissed only the complaint so they could file a motion for leave to amend the complaint.

We review the district court's 12(b)(6) dismissal de novo, *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 275–76 (6th Cir. 2019), and its denial of plaintiffs' motion for

reconsideration for an abuse of discretion, *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 691 (6th Cir. 2012).

Plaintiffs are correct that we differentiate between dismissing a complaint to allow for amendment and dismissing an entire case. *See, e.g.*, *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 557 (6th Cir. 2017) ("Normally, a district court will dismiss a case without prejudice when it believes that the complaint can be saved by amendment. . . . Conversely, a district court will dismiss a case with prejudice and enter final judgment when it determines that no amendment can save a complaint from the strictures of the civil pleading requirements."). But that distinction makes no difference here, for plaintiffs never requested leave to amend their complaint (nor, for that matter, did they attach a proposed amended complaint). There was only one operative complaint, so when the district court dismissed that complaint, nothing remained in the case. Thus, dismissal of the complaint resolved the case, and the district court's choice of language was of no moment. Accordingly, we find no error requiring reversal.

III.

We affirm the district court's judgment.